Kenneth M. SMITH, Petitioner,

v.

A. E. SLAYTON, Jr., Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 73-C-44-D.

United States District Court, W. D. Virginia, Danville Division.

Dec. 11, 1973.

---

John C. Lowe, Lowe & Gordon, Charlottesville, Va., for petitioner.

Robert E. Shepherd, Asst. Atty. Gen., Richmond, Va., J. Randolph Smith, Jr., Martinsville, Va., for respondent.

## OPINION

TURK, Chief Judge.

The Petitioner, Kenneth Wayne Smith, is a Commonwealth of Virginia prisoner. He was initially tried by a jury in 1971 in the Corporation Court for the City of Martinsville, Virginia, having been indicted for aiding and abetting the sale of marijuana, and during the trial he voluntarily took the stand and testified in his own defense. He was convicted, fined $300.00 and sentenced to a term of three years in the penitentiary. Petitioner's conviction was reversed by the Virginia Supreme Court and the case remanded for a new trial. Smith v. Commonwealth, 212 Va. 675, 187 S.E.2d 191 (1972).

Petitioner was retried before a jury on May 26, 1972, but at this trial he made the initial decision not to take the witness stand. The Commonwealth Attorney, in Chambers, after the petitioner had completed his defense but before formally resting, moved the court to allow the introduction of petitioner's testimony at his first trial as rebuttal evidence. Although petitioner objected most strenuously to the introduction of such evidence, the Trial Judge, relying on Section 19.1–267 of the Code of Virginia and the case of Harbaugh v. Commonwealth, 209 Va. 695, 167 S.E.2d 329 (1969), ruled that the Commonwealth could introduce petitioner's testimony from his first trial for the purpose of rebutting one of defendant's witnesses. Faced with the choice of allowing such testimony into evidence or giving testimony again at the second trial, petitioner, without waiving his objection to the court's ruling, requested and was granted permission to reopen his defense so that he might take the stand in his own behalf. Testifying after having been faced with this choice, petitioner was subjected to in depth cross-examination that may have been damaging to his case. Petitioner was again convicted by the jury, fined $100.00 and sentenced to three years imprisonment.

Following his second conviction, petitioner again sought a writ of error from the Virginia Supreme Court. The Virginia Supreme Court, without opinion, denied a writ of error on January 22, 1973, the effect of which was to affirm the judgment of the Martinsville Corporation Court. Petitioner then filed an appeal in the Supreme Court of the United States pursuant to 28 U.S.C. Section 1257(2). Two questions were presented in the appeal: (1) Whether the Commonwealth of Virginia may constitutionally classify marijuana as a narcotic drug and prohibit its sale as such? (2) Whether petitioner's consti-

tutional rights were violated when the trial court ruled that it would permit petitioner's testimony given at his previous trial to be introduced into evidence if he did not take the stand to testify? On June 11, 1973, the Supreme Court of the United States dismissed petitioner's direct appeal "for want of a substantial federal question." Smith v. Virginia, 412 U.S. 934, 93 S.Ct. 2778, 37 L.Ed.2d 393 (1973).

Petitioner then filed his petition for a writ of habeas corpus in this court challenging the legality of his confinement. Petitioner alleges in Count One of his petition that the ruling of the Corporation Court of the City of Martinsville permitting the transcript of testimony of petitioner from his previous trial to be admitted in the event he did not take the witness stand was in violation of his rights under the Fifth and Fourteenth Amendments, and in Count Two that Section 19.1–267 of the Virginia Code is facially unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment.

█ Petitioner has not heretofore litigated in any state court the question of the constitutionality of § 19.1–267 of the Virginia Code. Since he has not exhausted his state remedy as required by 28 U.S.C. 2254(b) as to this issue, the court will dismiss Count Two of the petition without prejudice. Petitioner has exhausted his state remedy as to Count One and the court must rule on the constitutional admissibility of his prior testimony, unless the dismissal by the U.S. Supreme Court of petitioner's appeal was a final determination on the merits of all issues raised by the petitioner in that appeal.

**I**

**EFFECT OF DISMISSAL BY U. S. SUPREME COURT OF AN APPEAL FOR WANT OF A SUBSTANTIAL FEDERAL QUESTION ON SUBSEQUENT HABEAS CORPUS PETITION**

█ It was the attack on the constitutionality of the Virginia Statutes classifying marijuana as a narcotic drug and prohibiting its sale as such as being repugnant to the U.S. Constitution after the statutes had been upheld by the Virginia Supreme Court that provided petitioner with a proper basis for an appeal as of right. However, it is clear that the petitioner presented a second question in his appeal—the admissibility at the second trial of a transcript of his testimony given at the first trial—the same identical issue raised in Count One of his *habeas* petition. Unlike the denial of a writ of certiorari which imports nothing as to the merits of a case, the summary disposition of an appeal by dismissal for want of a substantial federal question is a disposition on the merits.[1]

█ When the petitioner in the course of his appeal proceedings in the U.S. Supreme Court, attacked the constitutionality of the trial courts ruling as infringing on his privileges as protected by the U.S. Constitution, such contention was properly a basis for a petition for a writ of certiorari to that court pursuant to 28 U.S.C. § 1257(3) since clearly it involved a "privilege or immunity . . . claimed under the Constitution . . . of the United States." Had petitioner raised this issue by petition for a writ of certiorari and the same have been denied by the Supreme Court,

1. In discussing the U. S. Supreme Court's appellate jurisdiction and the distinction between an appeal as of right under 28 U.S.C. § 1257(2) and permissive review by writ of certiorari under § 1257(3), a group of the nation's foremost constitutional scholars recently conceded that "(t)hese lines of distinction are difficult to follow, both for counsel and for the Court." Report of the Study Group on the Caseload of the Supreme Court (Freund Commission Report), 57 F.R.D. 573, 604–605. The Commission advises filing both an appeal and a petition for certiorari where there is uncertainty in order to avoid any prejudice to the rights of the party. See Epton v. New York, 390 U. S. 29, 88 S.Ct. 824, 19 L.Ed.2d 808 (1968)

this court would not be precluded from considering that same issue in a *habeas* petition. U. S. ex rel. Epton v. Nenna, 446 F.2d 363 at 365–366 (2nd Cir. 1971). Likewise, this court would not be precluded from considering this question had it actually been raised on appeal, but considered by the Supreme Court as a certiorari petition as allowed by 28 U.S.C. § 2103, and the petition denied by the court. It follows that this court should consider Count One of the *habeas* petition on its merits unless the U.S. Supreme Court actually decided the issue when it dismissed petitioner's appeal.

Similar procedural issues arose out of the conviction of William Epton, a black militant, on charges of criminal anarchy and of conspiracy to commit riot and criminal anarchy in connection with the 1964 Harlem riots. Epton, when attacking his conviction on direct review, filed both an appeal and a petition for a writ of certiorari in the U.S. Supreme Court from the decision of the highest New York State Court.[2] The Supreme Court denied the petition for a writ of certiorari and also separately and explicitly dismissed the appeal for want of a "substantial federal question." Epton v. New York, 390 U.S. 29, 88 S.Ct. 824, 19 L.Ed.2d 808 (1968). When considering Epton's subsequent petition for *habeas* relief, both the U.S. District Court and the U.S. Court of Appeals for the Second Circuit felt free to pass upon Epton's claims previously raised in his petition for certiorari while at the same time refused to consider the issues raised in his prior appeal. United States ex rel. Epton v. Nenna, 318 F. Supp. 899, 906–909, affirmed 446 F.2d 363, 365–366 (2nd Cir.), cert. denied, 404 U.S. 948, 92 S.Ct. 282, 30 L.Ed.2d 265 (1971).

The fact that petitioner consolidated in his appeal to the U.S. Supreme Court all of the issues arising from his conviction which he felt impinged upon federal constitutional protections, rather than separating such issues into those suitable to be raised by appeal and those suitable to be presented by a petition for a writ of certiorari as is technically required by statute, (see 28 U.S.C. § 1257), should only preclude this court from considering those issues which properly should have been raised on appeal. To preclude petitioner from raising in this court those issues which he should have raised by a petition for certiorari—that is, to say in effect that a petitioner who mistakenly included some issues in his appeal may not later raise them by habeas corpus while another petitioner who fortunately made the correct differentiations as to issues may—gives undue weight to the formalisms of Supreme Court appeal procedure.

This court is of the opinion that the U.S. Supreme Court did not in fact pass on the merits of the issue raised in Count One of this *habeas* petition and that this court should now proceed to do so.

## II

### ADMISSION OF DEFENDANT'S PREVIOUS TESTIMONY AS COMPELLING TESTIMONY IN VIOLATION OF CONSTITUTIONALLY PROTECTED RIGHT TO REMAIN SILENT

On first consideration, Count One seems to present at least a colorable claim of deprivation of the petitioner's Fifth and Fourteenth Amendment rights. Yet, not only are all the precedents against the petitioner's contentions, but also the factual and procedural setting of this case reveal that no federal constitutional rights of petitioner were jeopardized.

The legality of the practice here in question had been decided by the highest courts in a number of states before it was raised as an issue in the federal courts. The rationales that the state courts have used to justify this practice

---

2. For an explanation as to why this approach was used, see Epton, supra, 318 F.Supp. 899, at 901 fn. 1.

can be classified into basically five catagories: (1) that by taking the stand at trial, the defendant becomes as any other witness and his testimony can be used in anyway which any witnesses' testimony might be used, (see Bess v. Commonwealth, 118 Ky. 858, 82 S.W. 576 (1904); (2) that the defendant's testimony at his first trial or judicial hearing is an admission or declaration against interest, and is therefore no different from any voluntary out of court statement and therefore may be introduced at a subsequent trial of the accused (see State v. Farrell, 223 N.C. 804, 28 S.E.2d 560 (1944); (3) that the admission or use of the defendant's prior testimony may tend to show guilt (see Miller v. People, 216 Ill. 309, 74 N. E. 743 (1905); (4) that the introduction of a defendant's former testimony does not tend to compel him to incriminate himself (see State v. Telley, 100 Utah 25, 110 P.2d 342 (1949); (5) that the use of the defendant's prior testimony does not constitute a comment on his failure to testify at his current trial (see Miller v. People, 216 Ill. 309, 74 N. E. 743 (1905). The use of one or more of these rationales is not dependent upon whether such testimony was used during the Government's case-in-chief (see People v. Boyd, 67 Cal.App. 292, 227 P. 783 (1924), on rebuttal or cross (see Collins v. State, 39 Tex.Crim. 441, 46 S.W. 933 (1898), or on whether the defendant's original testimony had been given at a preliminary hearing (see Dickerson v. State, 48 Wis. 288, 4 N.W. 321 (1880).

When this issue in turn came to be considered by the federal courts, they relied on much the same rationales utilized by the state courts, citing state decisions as authority for admissibility of the accused's prior testimony. Perhaps the clearest expression of both the rule and the general approach which the federal courts have adopted in this area is the dicta of the U.S. Supreme Court in Harrison v. United States, 392 U.S. 219, at 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), to the effect that "we need not and do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings." One of the cases which the Supreme Court cites in *Harrison* to support this proposition, Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108, 112–113 (1959), involved the use of excerpts from the defendant's testimony at his first trial as a part of the judicial admissions. The case relied upon in *Edmonds* for authority that such statements are voluntary admissions, Milton v. United States, 71 App.D.C. 394, 110 F.2d 556 (1940), in turn rested upon a Tennessee case which involved the admission of a statement, given in a prior civil matter, during the course of a prosecution for fraudulent insurance claims. Rafferty v. State, 91 Tenn. 655, 16 S.W. 728 (1891).

Perhaps the most comprehensive discussion of the use of a defendant's prior testimony by a federal court is found in United States v. Grunewald, 164 F.Supp. 644 (D.D.C.1958) wherein is cited most of the federal cases which have considered this issue in deciding for the admissibility of such prior testimony. In discussing a situation where there was at least an appearance of coercion upon the defendant to testify, the court remarked that the fact that "the prosecution's proof may tend to incriminate the defendant and the defendant may deem it desirable to take the stand does not spell out improper pressure," 164 F. Supp. at 648. The justification given for this conclusion is that "inferences flowing from properly adduced evidence do not constitute a coercive force in violation of a defendant's Fifth Amendment privilege." *Id.*[3]

3. Of course at common law a defendant was not permitted to take the stand at his trial under the doctrine that a person charged with a criminal offense was not competent to testify under oath in his own behalf at trial. This rule has been abolished in almost all common law jurisdictions within the last century. But there was much opposition to the abolition of incompetency for defendants in criminal trials, particularly in England,

Consequently, the precise issue presented to this court is whether or not the actual admission of the petitioner's prior testimony violated his constitutional rights. If such testimony could legally have been introduced against the petitioner at his trial without violating any of his constitutional rights, the fact that the petitioner took the stand in response to the actual or threatened introduction of such prior testimony does not in hindsight affect the constitutionally permissible nature of its admission. It was only after petitioner had called his last witness that the Commonwealth expressed a desire to introduce the petitioner's prior testimony. There is no indication that this evidence was to be used for any purpose other than for rebuttal or to impeach one of petitioner's witnesses. The prior testimony was never in fact introduced, since following the trial judge's ruling, the petitioner himself requested and was permitted to take the stand.

However, for purposes of this petition, the question remains as to whether or not the judge violated any of the petitioner's constitutional privileges or immunities by his ruling that such testimony might be properly admitted. The courts, both state and federal, have uniformly held that a defendant's prior testimony is admissible at a second trial, provided certain requirements as to trustworthiness are satisfied. See annotation in 5 A.L.R. (2d) 1404, 1408–11 §§ 3 & 4 and cases cited therein. It seems that no constitutional right or privilege of the petitioner would have been violated by the admission of his prior testimony, voluntarily given at a previous trial, for purposes of rebuttal or impeachment of witnesses called in his behalf.

■■ There has been no suggestion that the petitioner's decision to testify at his first trial was not voluntarily and knowingly made with the considered assistance of counsel. But even the fact that the petitioner made a difficult decision at his first trial to testify cannot shield him from the natural consequences of such action in the event the first conviction was overturned and he is again brought to trial for the same offense. McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973). The use of such prior testimony for purposes of rebuttal or impeachment is certainly a natural consequence of taking the stand in one's own defense.[4] The fact that the petitioner took the stand at his second trial only after the state threatened to introduce his prior testimony does not have the effect of compelling his testimony at the second trial since the state could constitutionally introduce that evidence. See *Grunewald,* supra. Legally there is no distinction between this case and the situation where the strength of the government's case-in-chief compels the defendant to take the stand in his own defense. The decision of the petitioner to take the stand at his second trial, apparently to avoid the effect that his prior testimony might have upon the jury, does not rise to the level of an unconstitutional coercion or compulsion on the part of the Commonwealth.

An appropriate order will be entered denying *habeas* relief in accordance with the views expressed herein.

out of a fear of weakening the privilege against self-incrimination. See, Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed. 2d 783 (1961).

4. The Supreme Court has recently sanctioned the admission of certain evidence for purposes of rebuttal or impeachment where such evidence would not be admissible in chief provided the trustworthiness of the evidence is satisfactory. Harris v. New York,

401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). While the *Harris* case involved a confession obtained without the benefit of *Miranda* warnings, the decision in that case does suggest that a more liberal policy with regard to the admissibility of evidence for the purposes of impeachment or rebuttal than for evidence in chief is constitutionally permissible. Such a policy is justified as assisting the court in its truth-finding function.